IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ARONDA GREENE                                                           PLAINTIFF

v.                              No. 3:15-CV-00050-JTR

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration                                          DEFENDANT

MEMORANDUM ORDER

I. Introduction

Plaintiff, Aronda Greene ("Greene"), has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for social security benefits. Both parties have filed Appeal Briefs (*docs. 11 and 14*), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Nowling v. Colvin*, 813 F.3d 1110, 1119 (8th Cir. 2016); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> In determining whether existing evidence is substantial, this court looks at both evidence that supports and evidence that detracts from the Commissioner's decision. We may not reverse simply because we would have decided differently or because substantial evidence supports a contrary outcome.

*Nowling v. Colvin*, 813 F.3d 1110, 1119 (8th Cir. 2016) (internal citations and alterations omitted).

In Greene's application for social security disability benefits, she alleged an onset date of September 24, 2011. (R. at 195). On May 22, 2013, the Administrative Law Judge (ALJ) conducted an administrative hearing, where Greene and a Vocational Expert (VE) testified.

In his July 31, 2013 decision, the ALJ found that was severely impaired by depressive disorder NOS, anxiety disorder NOS, asthma, diabetes, and obesity. (R. at 79). The ALJ also found that Greene had the residual functional capacity (RFC) to perform work at all exertional levels with nonexertional limitations of avoiding concentrated exposure to dust, fumes, gases, and extreme heat and cold; being limited to work where interpersonal contact is incidental to the work performed; performing tasks that are learned and performed by rote; work involves variables; and limiting her to work requiring little judgment with supervision that is simple, direct, and concrete. (R. at 81). While Greene could not perform her past relevant work, the ALJ found that Greene could perform other jobs in the national economy such as hand packer or hospital food service worker. (R. at 88). Accordingly, the ALJ found that Greene was not disabled. (R. at 88–89).

The Appeals Council denied Greene's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. Greene then filed her Complaint appealing that decision to this Court.

For the reasons stated below, this Court reverses the ALJ's decision and remands for further proceedings.

## II. Discussion

Greene argues that the ALJ erred in determining that she had the mental RFC for unskilled work. She contends that the ALJ failed to properly consider her GAF scores, some of which were in the 40's and placed her in the serious range of impairment in functioning.

Greene specifically objects to what she refers to as "agency boilerplate" in the ALJ's decision regarding GAF scores. (R. at 84). The Commissioner responds that the ALJ considered the GAF scores and found them inconsistent with the evidence as a whole.

In his decision, the ALJ states briefly that the GAF scores "are not supportive [sic] by the overall medical record," but does not elaborate upon the alleged inconsistencies with the medical record. Instead, the ALJ discusses at length what he sees as the inherent shortcomings of GAF scores for purposes of disability evaluation. (R. at 84). Thus, the ALJ improperly dismissed the GAF scores without considering them as opinion evidence.

3

Occupational functioning is one of three areas that are rated within the GAF. *See* DSM-IV-TR at 32 (the "GAF scale is to be rated with respect to only psychological, social, *and occupational functioning*.") (emphasis added). The introductory paragraph of the GAF scale instructs the examiner to "[c]onsider psychological, social, *and occupational functioning* on a hypothetical continuum of mental illness." DSM-IV-TR at 34 (emphasis added). The examples contained within the GAF scale include express references to occupational functioning, *e.g.* "conflict with peers or coworkers," "unable to keep a job," "no job." DSM-IV-TR at 34. Furthermore, the Eighth Circuit Court of Appeals has recognized that GAF scores are *relevant evidence* in evaluating a disability claim. *See Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009); *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003).

While there *may* have been good reasons for discounting Greene's GAF scores, the ALJ failed to meaningfully engage that issue. Instead, the ALJ substituted his own views on what he perceived to be the inherent shortcomings of GAF scores in evaluating disability. As a matter of law, an ALJ must consider all relevant medical evidence in the record, including GAF scores, and "is not free to ignore medical evidence[.]" *See Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); see also *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003).

## III. Conclusion

On remand, the ALJ should carefully update the medical record and ensure that he obtains and considers all of the medical evidence to support his RFC assessment, including Greene's GAF scores.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 1st day of August, 2016.

_____
UNITED STATES MAGISTRATE JUDGE